## Breneman's Estate. Waller's Appeal.

[Marked to be reported.]

*Assigned estate —Occupancy of premises by assignor.*

An assignee for benefit of creditors may permit the assignor to occupy and farm a part of the premises until sale without being surcharged either with rent or value of crops made by assignor. Detwiler's Ap., 96 Pa. 323, applied.

*Surcharging assignee—Sale below appraisement.*

Where the assignee put the property up at public sale without success, and afterwards sold the same at private sale at a price less than the appraised value, the fact that the purchaser resold the property at a profit affords no ground for surcharging the assignee with the profits of the resale, where the assignee acted in good faith.

*Judgment confessed to wife for debts assumed by her.*

A judgment confessed by the assignor to his wife a few days before the assignment may be allowed where such judgment was confessed *bona fide* to secure a debt due from the assignor to the wife and also debts of the husband assumed by her.

*Distribution—Marshaling assets—Subrogation.*

A subsequent lien creditor whose lien is not reached in the distribution of the real estate fund, is entitled to be subrogated to the rights of the prior lien creditors to a dividend out of the personal fund and the assets will be so marshaled.

*Commissions to accountant.*

Where the personal estate is about $3,300, and real estate $30,000, five

per cent on the personalty and two and a half on the realty is not excessive, especially where the assignee managed the estate for a year at a considerable profit.

Argued May 20, 1892. Appeal, No. 407, Jan. T., 1892, by a creditor, Frederick Waller, from decree of C. P. Lancaster Co., trust book No. 11, p. 385, confirming report of auditor on exceptions and to distribute estate of John A. Breneman, assigned for benefit of creditors. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The auditor, A. F. Hostetter, found the following facts: On March 26, 1888, John A. Breneman and wife executed a deed of assignment to Joseph Miller, his brother-in-law, for the benefit of Breneman's creditors, the estate consisting of 221 acres of farm land, heavily encumbered, and the personal property thereon. The assignee accepted the trust and carried on the farming operations for a year, assisted by the assignor and his wife, who retained possession of the dwelling and were paid wages, the assignee paying all expenses including household expenses for the assignor, and returning in his account $2,293.71 as the produce. The assignor also raised a crop of tobacco on several acres of the land, using the horses and farm implements of the estate with which to do at least a part of the cultivation of the tobacco; but it did not appear that the estate in anywise contributed toward the work or expense of raising or marketing it.

The auditor found that the assignee did not have possession of the land on which the tobacco was raised, the tobacco was not raised for him and he did not receive the price and was therefore not chargeable with it.

The farm was appraised at $150 per acre. It was offered at public sale, but not by order of court, and bid up to $140 per acre. This would not pay off the liens. The property was withdrawn and offered at private sale. Philip Frank offered $141 per acre but gradually raised to $144.25, which he told the assignee was his outside bid. The assignee finally sold to one Hoffman for $144.50. A few days afterwards Hoffman resold to Frank at an advance of $2,000. Before the articles of agreement between Hoffman and the assignee were signed, Waller, the appellant, a creditor, protested against the sale

and asked the assignee to offer it again at public sale. The assignee declined to do this without indemnity against loss. Frank bought up judgments against the property to the amount of $18,174.25. The assignee executed a deed to Hoffman and received the balance of the purchase-money over and above the judgments which Frank, bought up, and powers of attorney to satisfy those judgments. Hoffman immediately executed a deed to Frank, who settled with him according to the terms of their agreement. The auditor found that the assignee acted in good faith, and without supine negligence or willful default, and accordingly refused to surcharge him.

The wife of the assignee presented a judgment confessed March 17, 1888, nine days prior to the assignment. As to this claim the auditor reported: " The evidence in support of this claim shows that Mrs. Breneman received out of her father's estate about $4,900, in addition to a note of $300, with $108 interest, held by her father's estate against her husband, and which was at her and his request deducted from her share by her father's administrators. This sum of $408 is part of the debt for which this judgment was given. It is also shown that at the request of her husband, she paid a note of $300, given by him for mules, and a note of $600, given for horses, out of her separate moneys. These payments with two years' interest, amounting to $1,008, were included in the judgment.

" Six hundred dollars is to cover a note for this amount endorsed by Isaiah Miller for John A. Breneman. This note was renewed in bank on March 12, 1888, shortly before the assignment, for ninety days. When the judgment was given, Mrs. Breneman agreed to pay this note, and the amount was included in the judgment. She paid it, and produced it before the auditor.

" Five hundred dollars of the judgment is claimed to cover a book account, running from 1883 to 1888, due by John A. Breneman to Musser & Miller, of which firm the assignee is a member. This bill Mrs. Breneman swears that she assumed, at her husband's request, to pay, and that for this reason this amount was included. Her assumption was verbal only, and the bill seems not yet to have been paid. In the absence of Mrs. Breneman's admission that this item was included to protect this bill, we do not think this item could be allowed.

But the judgment and her testimony taken together, would seem in equity to make her in fact a trustee as to this part of the judgment, and, while she is not under legal liability on her assumption, this part of the judgment would go into her hands in trust for this debt."

The personal property sold amounted to $3,351.26; farm products, $2,293.71; amount from purchaser for preparing ground and for seed and seeding same, $346.83; realty, $31,944.43. The accountant claimed credit for $1,098.32 as commissions, computed as five per cent on personal, and two and one half per cent on real estate. The auditor refused to sustain exceptions to this item.

The realty fund in which the auditor included the farm products, was consumed by the prior liens, leaving Mrs. Breneman's judgment unpaid. The auditor awarded her a dividend on the amount of her judgment, and also awarded to her by subrogation a dividend on the aggregate amount of the judgments paid in full out of the real estate fund.

Exceptions filed by appellant alleged that the auditor erred (1, 2) in allowing Mrs. Breneman a dividend; (3) in not finding that her judgment was in favor of creditors; (4) in allowing interest thereon; (5) in subrogating her to the prior judgments; (6) in not surcharging accountant for the tobacco; (7, 8) in not surcharging accountant with difference between appraised value of real estate and amount received; and (9) in refusing to sustain exception to compensation.

The court, LIVINGSTON, P. J., dismissed the exceptions and confirmed the report. Appellant then took this appeal.

*Errors assigned* were (1–9) dismissing exceptions, quoting them.

*B. F. Davis*, for appellant.—The auditor's report shows that the wife did not establish that her judgment was to secure a debt of hers from the husband. It is therefore void as to creditors: Wilson v. Silkman, 97 Pa. 509. The note of $600 was an order for the payment of money within the Act of 1881, P. L. 17: Maginn v. Bk., 131 Pa. 364. The note was not indorsed by her; she could not therefore be charged with it; the same may be said of the $300 note. There is no evidence to show that the debts assumed by her were surrendered to

her; her verbal assumption was therefore not binding: Shoe-maker v. King, 40 Pa. 107. A promise is within the statute where it is collateral to a continuing liability of the original debtor: Townsend v. Long, 77 Pa. 143. See, as to judgment between husband and wife, Myers's Ap., 31 Pitts. L. J. 263; Fritchey's Est., 1 Pears. 169; and collusive judgments: Hamet v. Dundass, 4 Pa. 178; Bardwell's Ap., 1 Lanc. Bar, Dec. 18, 1869. As to rights to impeach the judgment: Titus-ville Bank's Ap., 85 Pa. 528; Stevens v. Diehl, 127 Pa. 416.

The rule as to subrogation is applicable to an actual not a fictitious fund: Scott's Ap., 8 Atl. R. 402. There is no un-bending rule that the personal estate must be first applied to payment of debts: Burkholder's Ap., 94 Pa. 522; Sheffy's Ap., 97 Pa. 321.

Under the Act of June 16, 1836, § 34, P. L. 737, the assignee must possess himself of the property. He did here, and that distinguishes this case from Detwiler's Ap., 96 Pa. 323. The income belongs to creditors: Bausman's & Herr's Ap., 90 Pa. 178; Griffith's Est., 1 Ches. Co. 39.

The appraisement is the prima facie measure of liability of the assignee. The burden is on him to show why he obtained less: Trickett, Assignments, p. 50, § 44; Reiff's Ap., 2 Pa. 256. Where the sale is not by order of court, a stricter con-struction prevails: Scott, Intest. L., 597, 2d ed. The only remedy is to surcharge the assignee: Bruce v. Jennings, 2 Pears. 61.

Commissions are not allowed on debts not collected—in this case the amount retained by Frank: Hower's Ap., 22 W. N. 536.

*H. M. North,* for appellee.—Appellant cannot complain that the wife's promise was verbal. The debt was due, and if the wife did not pay it the debtors could have the judgment marked to their use to that amount, to which extent she was a trustee. An insolvent debtor may prefer creditors by judg-ment: York Co. Bk. v. Carter, 38 Pa. 446; his wife as well as strangers: Lahr's Ap., 90 Pa. 507, 511.

Profits made by assignee from realty should be awarded to lien creditors: Preston's Est., 1 Ches. Co. 517; Irey's Est., 1 Ches. Co. 63; Griffith's Est., 1 Ches. Co. 39. But the assignee

is not chargeable with rental of realty used by the assignor: Detwiler's Ap., 96 Pa. 323.

The method of distribution adopted by the auditor gave each creditor, including lien creditors, a dividend out of the personalty. This accords with Morris v. Olwine, 22 Pa. 441; Keims's Ap., 27 Pa. 42; Miller's Ap., 35 Pa. 481; Patten's Ap., 45 Pa. 151; Graeff's Ap., 79 Pa. 146; Bair v. Shenk's Ap., 82 Pa. 115; Dean's Ap., 98 Pa. 101; Jordan's Ap., 107 Pa. 75; Boltz's Est., 133 Pa. 83.

Reasonable vigilance and good faith is a trustee's standard of duty: Fahnestock's Ap., 104 Pa. 46; Bunting's Est., 42 Leg. Int. 304: Eyster's Ap., 16 Pa. 372; Springer's Est., 51 Pa. 342; Hinkle's Est., 20 W. N. 351; Pleasonton's Ap., 99 Pa. 362; Greenwood's Ap., 92 Pa. 181; Springer's Ap., 4 W. N. 23; Conyngham's Est., 25 Pitts. L. J. 23; Beck's Est., 5 W. N. 274; Witmer's Ap., 87 Pa. 120; Sherer's Est., 41 Leg. Int. 125.

The compensation was the usual charge, without anything for personal services in managing farm.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

A careful examination of the numerous specifications fails to disclose error. The attempt to surcharge the account of the assignee with the sum of $2,000, and interest thereon, for the reason that he should have sold the real estate for that much more than he actually received, was ungracious. The evidence shows that he acted with prudence, and that he endeavored to get the best possible price for the property. It consisted of a large farm, heavily encumbered, and failing to get a satisfactory bid at public sale, he sold it afterwards at private sale for $144.50 an acre, which was an advance over previous offers. The fact that the purchaser resold it at an advance of $2,000 is no reason why the assignee should be surcharged with that sum.

The attempt to surcharge him with $1,107.47, the value of the tobacco raised upon the farm, has, if possible, even less merit. The assignment was made on March 26, 1888, a time of year when it is practically impossible to sell a farm, and extremely difficult to rent it. The assignee took upon himself the labor and risk of farming the place for the year, and has

accounted for the proceeds. He permitted the assignor to remain in the house, and allowed him to cultivate one of the fields with tobacco. The crop thus grown by the assignor, was subsequently sold by him for $1,107.48, and with this sum the creditors now seek to surcharge the assignee. The absurdity of this attempt to surcharge is apparent. The tobacco was the result of the labor of the assignor and his family, with perhaps the aid of hired help. It belonged to him, and neither the assignee nor the creditors had any rights in it. The most that the assignee could be surcharged with, if he were liable to a surcharge at all, would be the rent of the ground upon which the tobacco grew ; but it is well settled that the assignee is not liable to be surcharged with even this. In Detwiler's Appeal, 96 Pa. 323, it was held that a voluntary assignment for the benefit of creditors does not impose upon the assignee any duty to let the real estate, and, where the assignee permits the assignor to remain in possession, and use the real estate, he is not chargeable with the rental thereof. This is good law as well as common sense. It applies with especial force where the subject-matter of the assignment consists of a large farm, and the assignment itself is made at a time of the year when the farm can neither be sold nor rented. What is the assignee to do in such case ? The assignor has a right to remain until the farm is sold. The deed of assignment authorizes its sale, and while this might include the power to lease under some circumstances, it is rarely if ever done, as assigned estates are usually closed up within the year. It would have been as reasonable to surcharge this assignee with the market value of the vegetables, raised by the assignor in his garden, as to surcharge him with the price of the tobacco, raised in the field. The latter was a mere mode by which the assignor was able to obtain bread for his family, pending the settlement of his estate.

The allowance of the claim of Kate L. Breneman, the wife of the assignor, appears to have been entirely proper. The auditor finds that the claim was bona fide, and that it was shown to be a part of her separate estate.

In the ninth specification complaint is made of the accountant's commissions, which were five per cent upon the personal and two and one half on the real estate. The personal estate appears to have amounted to a trifle over $3,300, and the

real estate to $31,394.43.   We regard the commissioners as entirely reasonable, and within the rule designated by this court; especially in view of the fact that the accountant has turned over to the assigned estate the sum of $2,293.71 as the produce of the farm while in his hands.

The remaining specifications need not be referred to.

The decree is affirmed and the appeal dismissed at the costs of the appellant.